Good morning, Justice Rawlinson, Justice Christin, and Justice Garbus. Yes. Just for the record, we're not justices. We're plain old judges. I'm Sarah Gabin. I represent Appellant and Claimant Elias Forcelledo. Forcelledo. Thank you. Your Honor, I think this case is about Could you speak directly into the mic, please? Sure. Can you hear me now? Yes. Okay, thanks. Is this better? Much. This case is about whether Mr. Forcelledo satisfies a status that would make him potentially eligible for supplemental security income benefits. May I ask a question that I think cuts to the chase, or at least I intend it to? And that is, it seems to me that the only question we really have to decide is whether he has a final and enforceable order of removal. Is that right? I think that's one of two issues. The other issue is whether he was offered a hearing that allowed him fundamental due process to present a case that was consistent with the notice he received that told him what he might argue and present. Right. On the first issue, which is your main issue, I think there's one, that's the question. Does he have a final enforceable order of removal? If you could just focus on that one first, that would be helpful at least to me. All right. And so my understanding is that our procedure on this end is done. He's got the final order of removal. And the reason that you're arguing it's not enforceable is because CUBA won't take him back, basically. Is that right? There's no place to send him. Okay. So along those lines. So if I could get to my question. Oh, sure. There's a footnote that's cryptic. And this is surely not the only person who's ever been in this position. And the government just makes a cryptic mention, and I think cites a newspaper article, that 1,000 people have indeed been deported. I don't know where they're going or how that's working. Could you speak to that point? I don't know where that came from. I would only be speculating. I couldn't speak for that. Okay. All right. I'll ask the government when he comes up. Thank you. Thank you. Counsel, what's your best case authority to support the proposition that if there is nowhere to remove the immigrant, that the final removal order is negated? What case or regulation are you relying upon for that argument? I really wasn't able to find anything to address that on point. I think I'm trying to understand that if he's here and if the order cannot be carried out, then it's not really effective. He's under a supervisory order, but there's nowhere to send him. He is here. But that doesn't mean that the order of removal, that there is no final. That's the difficulty I'm having with the argument is it doesn't erase the fact that there is indeed a final order of removal in his file, and that has certain legal consequences. Your Honor, I do agree. There is a final order that is non-appealable, but it's not enforceable because there's no place to send him. Is there another place in the code where we talk about a final? There's a lot of places where we talk about the Congress and the agency and its regs talks about a final order of removal. But what about a final enforceable order of removal? That seems to be unique, and I wonder if it's unique to this statute given the situation with Cuba. Your Honor, I would not pretend to tell you I'm an authority on what a final removal order is. So my question is, how about if I do it this way? Do you know of any other place where it's a final enforceable order of removal? I do not. I do not. Who had the burden of proving that he was eligible for this relief? Didn't he have the burden? Yes, he does. What about his conviction? What was his crime of conviction? He was convicted of criminal activity and drugs. But he got a 24-year sentence. And he had a 24-year sentence. So he still has violated a serious felony, which also would disqualify him from getting Social Security benefits, wouldn't it? Your Honor, I don't think that the statute that I understand it reads in that way. He's, or the POMs, the Procedural Operating Manuals, say that if he's not subject to a legal, to a final, non-appealable, enforceable order of removal, he's potentially eligible to receive Supplemental Security Income benefits. Well, he's potentially. But even if he is potentially, is he eligible when he has this serious conviction on his record? Yes, sir, I think he is. And I say that because I have represented individuals with criminal histories who have been found eligible for Supplemental Security Income and also Social Security disability benefits. The standards are about medical disability and financial eligibility. Criminal history doesn't seem to be a factor that I've, it's not been a barrier anyway when I've had clients with records. Did you want to save the balance of your time for rebuttal? Yes. All right. Thank you, Counsel. Good morning. May it please the Court. Jeff Staples on behalf of the Commissioner, who asks that you affirm the District Court's judgment because the ALJ's decision is supported by substantial evidence. Although this is not what I would call the standard Social Security appeal, I think the facts and issues are fairly straightforward. Really, the only question that we have here is whether the final non-appealable removal order is enforceable. And what Mr. Forciato has done is conflated the fact that it has not been enforced with the legal theory that it's not enforceable. And that's not correct. Well, it can't be enforced tomorrow. It can't be enforced literally without a Cuban agreement. Actually, Your Honor, that's not quite accurate because under the United States Code, he could be sent to any country with a government that would accept him. So, Counsel, getting to my question that I asked earlier, your brief, I think, cites a, is it a newspaper article or something? It's a PBS, yes. Can you help us out with something a little more? So that was a footnote related to our argument that the mere fact that Cuba doesn't agree to take Cuban deportees does not mean that the order is not enforceable. It doesn't mean that we couldn't send him somewhere. Yes, Counsel, and I'm asking you to get to the citation. What you said in your brief, and I appreciate the argument, that the government has indeed removed 1,000 people. So my question is, how did that happen? What's the authority? Can you fill us in? It seems to be very important in this argument. Yes, the authority is 8 U.S.C. 1231 B.1.C. 4. What I'm looking for is something authoritative to show me that it has been done. That's what your brief argues. You mean? Your brief argues that 1,000 people have been removed. I'm asking you to help support that statement. I don't have anything like a case that would show that. Do you have a government document, anything that confirms that that has, in fact, happened? Nothing from the Department of Homeland Security? No report? No, Your Honor. Nothing of that nature? There's nothing in this record or a case or a document. Nothing we can take judicial notice of? No, Your Honor. I have nothing to that effect. Okay, there's 1,000 people. Where are they going? I think that that was, I guess that wasn't meant to be an offer of proof of anyone else's deportation status. It was just meant to illustrate the general principle that these orders can be enforced. Theoretically, they're enforceable. Yes, and specifically, this order is enforceable. Even though it has not been enforced. And if you look at ER-11. You have a much stronger argument. And I'm not saying that you don't prevail. I'm very mindful of who has the burden of proof here. But what I'm looking for, your argument seems to be that the government could enforce this against him. Where would they send him? Has anybody agreed to take him? You know, I'm working for the Social Security Administration. I don't know how the Department of Homeland Security decides where to send people. I don't know how that mechanism works. But what we have in this record, your Honor, is the order of supervision saying that at any time that DHS tells Mr. Forsolato, he is required to show up and be deported if DHS decides to do that. And that's right there in the record at ER-11. And so that shows that at least DHS believes it's enforceable. Maybe they're not going to enforce it today or tomorrow, but they could at any time. And they've put that right in the record there. It's just the obvious problem that you've got if you're going that route is that this statute was enacted at a time when Congress was, you know, used the word final and enforceable very aware of the fact that Castro wasn't taking them back, if I can use that. Yes, and I — Shorthand. And so that's why it jumps off the page at us, because there are so many instances of the code talking about final orders of removal without using the word enforceable. It seems to me your stronger argument is that he's got the burden of proof. That's what the ALJ relied on.  He's got the burden of proof, and he didn't meet it. To that point are the commissioners. We referenced the Palms today. Mr. Forsolato had the opportunity. He had a hearing. He was asked by the ALJ, please show me any kind of documentation that would show me that this order isn't what it appears to be, because what it appears to be is a final, non-appealable, enforceable order, and DHS makes that determination. At the hearing, what was going on in terms of the ALJ asking him to show the green card? What was the reason for that? You know, he was offering to show a work-related permit. But the ALJ said, show me his legal status, show me his green card. And so when they asked for a continuance to get that, it was denied. Why wasn't that a violation of due process? Well, I think what the ALJ was saying was that he was offering, he wasn't just offering to give the green card, he said that he didn't have that. He was offering to give a work permit. And there's nothing in here that shows you can't work, but even if you can work here, that doesn't mean that the order is not final, non-appealable, and enforceable. So what the ALJ was getting at, and, you know, maybe something got lost in translation, but what the ALJ was asking for is any kind of documentation that would show me that this is either not final, not appealable, or not enforceable. But he asked specifically for a green card. He said, show me his green card. And then the attorney said, I asked for a continuance, so that within a month or so he would have the document, and that was denied. So if the ALJ asked for a green card, the attorney asked specifically for a green card, not anything else. And the attorney said, give me a month to get it, and the ALJ did not allow that. Why isn't that a violation of due process? Because my understanding of what they were offering to give was that work permit. It was not a green card. He doesn't have a green card. And he said that at the hearing. He said, I don't have a green card. And so they weren't offering to give that. They were offering to give something that was not germane to this discussion. And so that's why the ALJ said, no, I'm not going to hold this open for you to give something that doesn't inform my analysis. When the ALJ asked for a green card, I think what he meant was, and I think also said, show me something of your legal status here. Show me something that you're allowed to be here and something that would kind of undercut what the record already shows, which is you could be deported at any time. Show me something that allows you to be here on a more permanent basis, something that would qualify you to receive. Which he didn't have. He didn't have LPR status because he was subject to a final order of removal. That's correct, Your Honor. Judge Rawlinson is asking something different, counsel. And that is, it was very specific. It's a peculiar place in the record where it's very specific about a green card. And I agree that that may have been inartful. But I would submit that our ALJs don't really deal with immigration issues that frequently. And so to the extent that the ALJ, I would call that an inartful request. Did you understand it? Forgive me for interrupting. Did you understand the ALJ to be asking for LPR status? Show me you've got LPR status and not just a work authorization. Is that what you're telling us now? Yes. Yes. So Mr. Forsolato was saying, oh, I have a work permit. And I can show that. I can bring that to you if you hold the record open. And the ALJ was saying, no, that doesn't do it. I think that's why the ALJ was referring to a green card. You know, give me something more than just, in the interim, while we don't deport you, you can work here. That doesn't change anything. So I don't need that document. What I need, and this is where the ALJ maybe was confused and asked for a green card. But I think it's pretty clear that what the ALJ was asking for is something stronger, something that would show that you would be qualified in your immigrant status to receive supplemental security income benefits, because on the record before the ALJ, it seemed pretty clear that there's a final non-appealable and enforceable order.  Thank you. I think Judge Garbus had a question about his eligibility because of the fact that he was, he did serve a 24-year prison sentence for an aggravated felony. And folks that are in prison are ineligible to receive benefits, but once you're out of prison, you can. That prior conviction is not a categorical bar. Although here, the aggravated felony led to Mr. Forsolato's removal. And so, or the order of removal at least. So it is germane to that piece of the analysis. And the fact that he was convicted of an aggravated felony makes him ineligible for withholding of the removal. And it led to this final order that's referred to repeatedly in the administrative record. So because substantial evidence supports the ALJ's finding that Mr. Forsolato is not qualified to receive supplemental security income benefits, the court should affirm the district court's judgment, unless the court has further questions. Thank you. It appears not. Thank you, counsel. Rebuttal? Your Honors, I think the rebuttal that I have focuses on fundamental due process. And I think those arguments jump out at me after hearing counsel's argument to you. Mr. Forsolato was given a notice in his initial notice of disapproved claim. I'm referring to Exhibit 21 and 22, excerpts of record 21 and 22. In excerpt of record number 22, item 8 on that list says that aliens whose deportation has been withheld under Section 243H of the INA as in effect prior to April 1, 1997, or whose removal has been withheld under Section 241B3 of the INA, SSI eligibility is limited to the first seven years after deportation or removal is withheld. And then if we turn to excerpt of record 10, it does say in the first full sentence below the heading that the order is pursuant to Section 243B of the INA. Sorry, I'm looking at ER 10. Where is that? Oh, sure. Your Honor, if you were to see the name of the ---- I see it. I see it. I see it. Okay. Sorry. So this is the notice that Mr. Forsolato received. And among the other items, he was allowed to demonstrate that he satisfied any of these, and then he would accordingly be potentially eligible for supplemental security income. At the hearing, the judge just went with his own notions of what Mr. Forsolato may or may not prove and was very inflexible about it. Okay. But is your argument that he was an ---- your client was entitled to, you know, continuance to go get a green card? Because a green card wasn't going to cut it, right? No. And he wasn't ---- and nor would a work permit have cut it. Neither one would have cut it. But I think he was entitled to a hearing where the judge asked whether he satisfied any or all of the items enumerated in the notice of disapproved claim. If I agree with you that your client had wobbly notice or imperfect notice of what was required of him, this is your opportunity to tell me how he was prejudiced. He was prejudiced because the judge imposed extra requirements that Mr. Forsolato was not obliged to satisfy. Okay. Mr. Forsolato ---- But, ma'am, if I agree with you there, even if I agree with you there, what I'm looking for is could your client have met his burden of proof to show that he was not subject to a final enforceable order of removal? I think he could have satisfied Item 8 on Excerpt of Record 22. Okay. Hang on. Let me just get to that because I want to make sure I understand your argument. On ER 22. Yeah. Okay. He could have shown what? He could have shown that he was under an order of removal that had been withheld under Section 241b3 of the INA. The order has been ---- But he wasn't subject to withholding because he had been convicted of an aggravated felony is my understanding. He's not eligible for withholding of removal. I think that he was ---- I mean, that's just a question. That's black letter law, isn't it? I think the order is being withheld because it's not being carried out. It's there. Withheld is a term of art. It's a term of art. And maybe the notices and the statutes aren't defining terms well, and they're leaving them up to anyone's guess what they mean. Well, it says withheld under Section 243H. So it's not subject to interpretation. It's withheld under those provisions. Or whose removal has been withheld, Your Honor, under Section 241b3? Right. And then we go to Excerpt of Record 10, and it reads to me as if that's exactly what's taking place here. Section 243b of the Immigration Nationality Act is what's being invoked here. The order is being withheld. And in lieu of an order of removal, he's been placed under an order of supervision. Generally, if there's a withholding of removal under the statute, there's an order to that effect from an immigration judge. Yeah. There is an order of removal, but the order of ---- Oh, I see. If there is withholding of removal granted. And we don't have that in this record. No, we don't. No. You've asked me, are you wanting us to look at 241b3? No, I wasn't asking that you look at that, but that would be fine. Yes, yes, you should look at that. And you should also, Your Honor, if you'd like, to look at 241a3. A3 as well. 241a3? Yes, and also b3. All right. And 243h. That's what you said. Yes, yes, I think so. Okay. That would be all I have, Your Honors. All right, thank you. Thank you to both counsel for your arguments in this case. The case just argued is submitted for decision by the court.
judges: Rawlinson, Christen, Garbis